UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **JOHN E. SCHNEIDER**<br>450 South Maple Street<br>Bowling Green, OH  43402<br><br>and<br><br>**ANDREW R. BUCHER**<br>8162 South Bridgeway Drive<br>Maumee, OH  43537<br><br>and<br><br>**ROBERT SMITH**<br>1168 West Main, Apt. 3<br>Bellevue, OH  44811<br><br>*On Behalf of Themselves and Those Similarly Situated*<br><br>　　　　　　Plaintiffs<br><br>　　vs.<br><br>**JOS. A. BANK CLOTHIERS, INC.**<br>c/o C T Corporation System<br>1300 East Ninth Street<br>Cleveland, OH  44114<br><br>　　　　　　Defendant | CASE NO.<br><br>JUDGE<br><br><br><br><br><br><br><br><br><br><u>**CLASS ACTION COMPLAINT**</u><br><br>**[Jury Demand Endorsed Hereon]** |

　　　　Plaintiffs, John Schneider, Andrew Bucher and Robert Smith, through undersigned counsel, on behalf of themselves and all Ohio residents similarly situated,

allege the following based on personal knowledge as to allegations regarding the Plaintiffs and on information and belief as to other allegations.

## INTRODUCTION

1. This case is about Jos. A. Bank's deceptive and unlawful use of the words "free" and "regular price" in promotional materials advertising Jos. A. Bank's suit, sportcoat and dress pants "sales." Jos. A. Bank induced the Plaintiffs and other consumers to purchase clothes based on falsely represented "discounts" from "regular prices" that do not exist.

2. Jos. A. Bank's "buy one get one free" suit offers and other similar promotions require consumers to buy one "regular price" suit to get one (or more) free, but the stated "regular price" is a fabrication. It is a price no consumer has actually ever paid for a Jos. A. Bank suit not in connection with some sale or discount. It is a price constructed from whole cloth by Jos. A. Bank's marketing wizards to deceive consumers into believing they are getting a good deal.

3. The Ohio Attorney General has expressly declared such practices "inherently deceptive" in OAC 109:4-3-04, which states in part:

> It is the express intent of this rule to prohibit the practice of advertising or offering goods or services as "free" when in fact the cost of the "free" offer is passed on to the consumer by raising the regular (base) price of the goods or services that must be purchased in connection with the "free" offer. In the absence of such a base price a "free" offer is in reality a single price for the combination of goods or services offered, and the fiction that any portion of the offer is "free" is inherently deceptive.

4. In addition, the Ohio Attorney General promulgated specific rules targeting advertisements promoting false sale prices and discounts that are deceptive and therefore illegal:

> This rule is designed to define with reasonable specificity certain circumstances in which a supplier's acts or practices in advertising price comparisons are deceptive and therefore illegal. For purposes of this rule, price comparisons involve a comparison of the present or future price of the subject of a consumer transaction to a reference price, usually as an incentive for consumers to purchase. This rule deals only with out-of-store advertisements as defined in paragraph (B)(3) of this rule. The rule stems from the general principle, codified in division (B) of section 1345.02 of the Revised Code, that it is deceptive for any claimed savings, discount, bargain, or sale not to be genuine, for the prices which are the basis of such comparisons not to be bona fide, genuine prices, and for out-of-store advertisements which indicate price comparisons to create false expectations in the minds of consumers. *See* 109:4-3-12(A)

5. This lawsuit seeks damages equal to the costs of the "free" offers that Jos. A. Bank has deceptively passed on to its customers and to recover the advertised savings on falsely discounted items, all of which can be assessed on a per transaction basis across the Class.

6. For reasons made clear below, a class action lawsuit is the most efficient way to remedy the harm done by Jos. A. Bank's deceptive sales practices and to make whole the Ohio consumers they have systematically deceived and misled.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative Class members exceed

3

$5 million, exclusive of interest and costs, and at least one of the members of the proposed Class is a resident of a different state than Jos. A. Bank.

8. Venue is proper in the Northern District of Ohio, pursuant to 28 U.S.C. 1391, because Jos. A. Bank is subject to personal jurisdiction there and regularly conducts business in that district, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred and continue to occur in that district.

## THE PARTIES

9. The named Plaintiffs are all Ohio residents and each is a "consumer" as defined by R.C. 1345.01(D). Each has purchased items of clothing from Defendant.

10. Similarly, all members of the putative Class are Ohio residents and each is a "consumer" as defined by R.C. 1345.01(D).

11. Defendant Jos. A. Bank Clothiers, Inc. ("Jos. A. Bank" or "Defendant") is a publicly-traded Delaware corporation with its principal place of business in Maryland.

12. Jos. A. Bank operates a national chain of retail clothing stores and is a "supplier" as defined by R.C. 1345.01(C). Defendant operates approximately twenty-five (25) stores throughout Ohio, including five (5) stores in Cuyahoga County.

13. Jos. A. Bank engages in thousands of "consumer transactions" throughout Ohio as defined by R.C. 1345.01(A). All transactions referenced in this complaint are consumer transactions under the CSPA.

## THE CONSUMER TRANSACTIONS BETWEEN SCHNEIDER, BUCHER, SMITH AND JOS. A. BANK

14. On or about March 11, 2012, Plaintiff Schneider purchased a suit from Defendant for what Defendant advertised via television, the internet, postcards and

4

other outside advertisements, as well as in-store—as the purported "regular price" of $595.  This purchase was a "consumer transaction" as defined by R.C. 1345.01(A).  As an incentive to purchase the suit, Defendant promised to give Schneider a "free" suit, plus two "free" shirts and two "free" ties.

15. On or about June 7, 2012, Plaintiff Bucher purchased a suit from Defendant for "½ OFF" of what Defendant advertised via television, the internet, postcards and other outside advertisements, as well as in-store—as the purported "regular price" of $695.  This purchase was a "consumer transaction" as defined by R.C. 1345.01(A).  As an incentive to purchase the "1/2 OFF" suit, Defendant promised to give Bucher a second "free" suit.

16. On or about June 20, 2012, Plaintiff Smith purchased a suit from Defendant for "70% OFF" of what Defendant advertised via television, the internet, postcards and other outside advertisements, as well as in-store—as the purported "regular price" of $895.  This purchase was a "consumer transaction" as defined by R.C. 1345.01(A).

17. In order to take advantage of the "FREE" sales, Plaintiffs had to purchase a suit or sportcoat at the purported "regular price."

18. However, these "regular prices" did not reflect the true price regularly paid by consumers for Jos. A. Bank suits.

19. The "regular price" was grossly inflated by Jos. A. Bank in order to pass the costs of the "sales" on to consumers.

20. These inflated regular prices mean that sales advertising a dramatic discount from the "regular price" on a single item is also deceptive and illegal.

5

21. The Class members all purchased suits under substantially similar conditions as Plaintiffs throughout the Class period.

**JOS. A. BANK INFLATES THE "REGULAR PRICE" OF ITS MERCHANDISE**

22. Throughout the Class period and on a near continuous basis, Jos. A. Bank frequently advertised the following various offer for suits: "Buy 1 (suit at "regular" price) get 2 (suits) FREE!", "OVER 65% OFF ALL SUITS!", "Buy a Suit, Get 2 Suits, 2 Dress Shirts, 2 Silk Ties FREE!", "ENTIRE STORE!, Buy Any 1, GET 2 FREE!", "Buy Any Suit, Get 1 Suit, 2 Shirts, 2 Silk Ties FREE!", "All Suits 60% off your 1st, 70% off your 2nd", "THREE TIMES THE SUIT SALE! Buy 1 Suit, Get 2 FREE!", and so on. At other times, suits were touted as being "65% OFF" and even up to "75% OFF". And at other times, suits were "marked down" to a raw dollar price, for example, $199 or $119 per suit.

23. Jos. A. Bank advertised similar or identical sales with regard to sportcoats and dress pants, including "Buy one sportcoat get one free!", "Buy one sportcoat get two shirts and two dress pants free!", "60% off blazers and sportcoats!" and "50% off dress pants!".

24. In each case, Jos. A. Bank based these purported discounts on phantom "regular prices"—prices which do not reflect the true price regularly paid by consumers for their suits.

25. The deceptive "sales" in the past two years are perpetual. In reality, Jos. A. Bank suits, sportcoats and dress pants are on "sale" almost 100% of the time.

26. A review of the Company's website as of the time this Complaint was drafted did not reveal a single suit, pair of dress pants or sportcoat being sold at "regular price," that was not part of a sale.

6

27. Because Jos. A. Bank suits are never, or almost never, sold at what Jos. A. Bank touts as "regular price," the purported "regular price" is by definition not "regular," and is, instead, illusory.

28. Exemplars of marketing materials that Jos. A. Bank has used to tout its "sales" in the past 2 years are attached as Exhibit 1. Jos. A. Bank has also advertised "free," "% off" and similar sales via the internet, television, radio, e-mail, direct phone calls to consumers and out-of-store signage. In each case, Jos. A. Bank has falsely promised that its suits have a certain "regular price."

29. When then-New York State Attorney General Eliot Spitzer investigated Jos A. Bank's sales practices in New York in 2003, he found that less than 1% of Jos A. Bank's suits, formal wear, dress pants and sportcoats were sold at the purported "regular price." Assurance of Discontinuance attached as Exhibit 2. On information and belief, a similar number of suits suit in Ohio are sold at "regular price."[1]

30. Per the Company's most recent 10-K, Jos. A. Bank's sales practices are currently being investigated by the Attorney General's office in both Georgia and Florida. 10-K attached as Exhibit 3.

31. Publicly available financial information and analysis of its ongoing sales in Ohio demonstrates that the real "regular price" of Jos. A. Bank's suits, sportcoats and dress pants is 30% or less of the regular price they advertised. Jos. A. Bank still maintains an approximately 60% gross margin on its suits, sportcoats and dress pants <u>even after all sales and promotions</u>. *See* 10-K at p. 38. This is how Jos. A. Bank can

---

[1] It appears Jos A. Bank did temporarily cease to use the particular deceptive marketing practices for which the New York State Attorney General fined them in 2004 in the state of New York. They continued to use those practices, which are substantially similar to the practices alleged herein, elsewhere and, on information and belief, have also since returned to using them in New York State.

7

afford to have a "three times the suit" sale or a "Buy 1, Get 2 free" sale while still generating significant profits. Jos A. Bank simply passes the costs of its "sales" on to the consumer.

32. That deception proximately injures and damages the consumer who is not getting a "deal" or a "sale" price at all, but rather, is paying an inflated "regular price" for suits not worth nearly that much.

33. Jos. A. Bank represented to the Plaintiffs and those similarly situated that they would be receiving a suit, sportcoat or dress slacks of a certain quality – that is, a suit, sportcoat or dress slacks of a quality commensurate with its "regular" price. What the Plaintiffs and those similarly situated actually received was a suit, sportcoat or dress slacks that was greatly inferior in value to what was represented by the regular price. This violated R.C. 1345.02(B)(2).

34. For, example, when Smith bought a suit he believed was regularly sold for $895, he assumed that suit would be comparable in quality to suits sold for $895 by other men's specialty retailers, such as Brooks Brothers, J. Press, or sold at traditional department stores such as Neiman Marcus or Nordstrom.

35. Smith was induced by Jos. A. Bank's advertising and marketing into believing that he was receiving an excellent value by purchasing a suit of such quality at such a low price – in fact, that was the reason he entered into the transaction with Jos. A. Bank.

36. However, in producing Smith's suit and, in fact, all of their suits, Jos. A. Bank did not employ the quality of materials, construction or standards of craftsmanship one would expect of a suit with the retail price they advertised – in the case of Smith's

suit, $895.  The quality of the suit Smith and each Class member purchased was not remotely commensurate with that of a suit sold at the regular retail price advertised by Jos. A. Bank.

37. Instead, the quality of Jos. A. Bank's suits, sportcoats and dress slacks was comparable to, at best, garments sold at retail, at a small fraction of the Defendant's advertised regular price.

38. As a current example showing the true price of a Jos. A. Bank suit, Jos. A. Bank recently ran a marketing campaign with a $200 "price that works for you" on its executive suits, whereas during "3 for 1 sales," the same suit is said to have a "regular price" of around $595.

39. Similarly, Jos. A. Bank has a current promotion with a "price that works for you" of $275 on its signature suits. Yet, during Jos. A. Bank "free" sales, it claimed the signature suits had a "regular price" of $795.

40. In sum, Plaintiffs and proposed Class members are getting suits worth nowhere near the claimed "regular price." They are not getting a "deal" at all.

41. By the lapse of time, the "sales price" of Jos. A. Bank's suits, sportcoats and dress pants has become the true "regular price" due to the fact that the sales are never ending. OAC 109:4-3-04(H). Thus, the stated regular price and the offer of "free" goods are illusory and deceptive.

42. Jos. A. Bank also states that its sales are for a "limited time" or "today only" or the like. This practice is also false and deceptive, because as soon as one sale ends, another substantially similar sale begins.

9

43. Jos. A. Bank spends millions of dollars within Ohio to promote its deceptive sales tactics and has done so with great success to date. Throughout the Class period, Jos. A. Bank has sold thousands of suits, sportcoats or dress pants to Ohioans in violation of the Consumer Sales Practices Act—and specifically in violation of OAC 109:4-3-04 and 109:4-3-12. Those sales have generated millions of dollars in profits for the Company.

44. In the meantime, the Class representatives and the Class members have paid for the cost of Jos. A. Bank's sales and have received nothing for free or at the stated discount.

### OHIO BANS THE DECEPTIVE INFLATION OF "REGULAR PRICES" IN CONNECTION WITH SALES OFFERS

45. Ohio's regulatory framework protects consumers from unscrupulous suppliers and also benefits honest suppliers who do not tout false "free" and reduced price sales.

46. As shown above, throughout the Class period, Jos. A. Bank systematically, continuously and repeatedly advertised and sold men's suits, sportcoats and dress pants in connection with illusory and deceptive "free," "1/2 OFF" and "% OFF" offers in violation of OAC 109:4-3-04, which begins by stating:

> It shall be a deceptive act or practice in connection with a consumer transaction for a supplier to use the word "free" or other words of similar import or meaning, except in conformity with this rule. **It is the express intent of this rule to prohibit the practice of advertising or offering goods or services as "free" when in fact the cost of the "free" offer is passed on to the consumer by raising the regular (base) price of the goods or services that must be purchased in connection with the "free" offer. In the absence of such a base price a "free" offer is in reality a single price for the combination of goods or services offered,**

> **and the fiction that any portion of the offer is "free" is inherently deceptive**.

47. In Ohio, "regular price" is a term of art defined by OAC 109:4-3-04(F):

> **(F) (1)** "Regular price" means the price at which the goods or services are openly and actively sold by a supplier to the public on a continuing basis for a substantial period of time. A price is not a regular price if:
>
> **(a)** It is not the supplier's actual selling price;
> **(b)** It is a price which has not been used in the recent past; or
> **(c)** It is a price which has been used only for a short period of time.

Jos. A. Bank's claimed "regular price(s)" during its frequent sales do not meet this definition because the advertised regular price is not its actual selling price and/or it is a price which has been used only for a short period of time.

### COUNT I: OHIO CSPA VIOLATION (R.C. 1345.01 *et seq.*)

48. As stated above, throughout Ohio, Defendant Jos. A. Bank engages in an aggressive marketing campaign through frequent use of television commercials, targeted mailings, Facebook, email, targeted telephone campaigns and in-store advertising during its deceptive and illusory suit "sales."

49. While the terms of Jos. A. Bank's sales may change slightly from sale-to-sale, each sale violates established rules that Ohio's Attorney General has promulgated under the CSPA. And during each "sale," Defendant treats its customers in a uniform manner by inducing them to buy suits, sportcoats and dress slacks on the basis they are receiving free goods and/or goods at a price significantly below their usual retail value.

50. Throughout the Class period, Jos. A. Bank's sales were not in conformity with—and in direct violation of—Ohio Administrative Code 109:4-3-04 and 109:4-3-12,

11

which are rules promulgated by the Ohio Attorney General under R.C. 1345.05 and which amplify R.C. 1345.02.

51. The administrative Rule specifically states, among other things:

    i. It is the express intent of this rule to prohibit the practice of advertising or offering goods or services as "free" when in fact the cost of the "free" offer is passed on to the consumer by raising the regular (base) price of the goods or services that must be purchased in connection with the "free" offer. *** OAC 109:4-3-04(A)(1).

52. Under the rule, "free" means, "(B) For the purposes of this rule, all references to the word "free" shall include within that term all other words of similar import and meaning. Representative of the word or words to which this rule is applicable would be the following: "Free;" "Buy 1, Get 1 Free;" "2 for 1 Sale;" "50% Off with Purchase of 2."

53. Further, under provision (F)(1) of the Rule, "Regular price" means the price at which the goods or services are openly and actively sold by a supplier to the public on a continuing basis for a substantial period of time. A price is not a regular price if: (a) It is not the supplier's actual selling price; (b) It is a price which has not been used in the recent past; or (c) It is a price which has been used only for a short period of time."

54. Jos. A. Bank's claimed "regular price" does not meet this definition.

55. Finally, division (H) of the Rule states:

    ii. **Continuous or repeated "free" offers are deceptive acts or practices since the supplier's regular price for goods to be purchased by consumers in order to avail themselves of the "free" goods will, by lapse of time, become the regular price for the "free" goods or services**

>       **together with the other goods or services required to be purchased. Under such circumstances, therefore, an offer of "free" goods or services is merely illusory and deceptive.**

56. Based upon the foregoing and the remainder of OAC 109:4-3-04, Jos. A. Bank was on specific notice that its conduct in connection with the marketing and sales of its suits, sportcoats and dress slacks was an inherently deceptive act or practice in violation of OAC 109:4-3-04 and R.C. 1345.02.

57. Additionally, Jos. A. Bank also violates the specific prohibition of OAC 109:4-3-12, which is also promulgated under R.C. 1345.09 and amplifies R.C. 1345.02. The 109:4-3-12 Rule specifically prohibits false price comparisons.

58. That Rule begins by stating:

> iii. **This rule is designed to define with reasonable specificity certain circumstances in which a supplier's acts or practices in advertising price comparisons are deceptive and therefore illegal.** For purposes of this rule, price comparisons involve a comparison of the present or future price of the subject of a consumer transaction to a reference price, usually as an incentive for consumers to purchase. This rule deals only with out-of-store advertisements as defined in paragraph (B)(3) of this rule. The rule stems from the general principle, codified in division (B) of section 1345.02 of the Revised Code, that it is deceptive for any claimed savings, discount, bargain, or sale not to be genuine, for the prices which are the basis of such comparisons not to be bona fide, genuine prices, and for out-of-store advertisements which indicate price comparisons to create false expectations in the minds of consumers.

- The rule goes on to state at division (E)(1)

> i. It is deceptive for a supplier in its out-of-store advertising to make any price comparison by the use of such terms as "regularly…...., now…....," "........per

13

      cent off," "reduced from….....to…......," "save $...... . .,"
      unless: (a) The comparison is to the supplier's regular
      price…

59. Jos. A. Bank has violated the Rule and R.C. 1345.02 by claiming price comparison to a false "regular price," which has the same definition as 109:4-3-04. *See* 109:4-3-12(B)(6).

60. For example, when Plaintiff Smith bought his suit for $268.50, he was told the suit was "regularly" $895. However, that suit was never actually sold for $895 rendering the price comparison entirely false. The true "regular price" was far closer to the $268 Smith paid. Thus, Smith was denied his promised (or any) discount in violation of Ohio law.

61. Jos. A. Bank, in advertising a completely inaccurate and inflated retail price for the suits purchased by Smith, the Plaintiffs and the putative Class, intentionally misled the Plaintiffs and the Class into purchasing suits, sportcoats and dress pants they believed to be of a "particular standard, quality, [or] grade" when those items were simply not of that quality.

62. Based upon the foregoing and the remainder of OAC 109:4-3-12, Jos. A. Bank was on specific notice that its conduct in connection with the marketing and sales of its suits is a deceptive act or practice in violation of OAC 109:4-3-12 and R.C. 1345.02.

63. Jos. A. Bank's conduct has been widespread, uniform and systematic throughout Ohio; therefore, a Class action is appropriate under R.C. 1345.09. Jos. A. Bank's conduct has damaged Plaintiffs and the Class members.

14

64. While the Class members may have different damages depending upon the "sale" ongoing at the time of their purchase, the damages are readily and easily calculable and will be a matter of arithmetic once the actual "regular price" of Jos. A. suits in Ohio is determined.

65. Jos. A. Bank keeps detailed sales data and those true "regular prices" can be easily determined by the finder of fact.

## DAMAGES

66. With the data from Jos A. Bank, the finder of fact will be able to reach determinations as to the true "regular price" of each of Jos A. Bank's suits.

67. Jos. A. Bank does not have a "regular price" of $595 for the suit Schneider purchased, for example.

68. Because the *true* regular or average price of a Jos. A. Bank "executive suit" is at most $150-$200, Jos. A. Bank deceived Schneider into paying an additional $395-$445 for his "regular price" suit to cover the cost of the "free" items associated with the "sale," as well as a substantial profit for Jos. A. Bank.  Thus, Schneider's compensatory damages are the additional amount be paid, beyond the suit's <u>true</u> regular price.

69. Put another way, while Schneider received a number of items, none of them were for "free" because he spent at least $395 to cover the cost of the "free" offer, which is exactly what 109:4-3-04 and 109:4-3-12 are meant to protect against.  That $395 should be returned to Schneider and those similarly situated.

70. In the example of Plaintiff Smith, he paid $268.50 for a suit that was advertised as "70% off" of a comparative "regular price" of $895.

71. Due to the frequency of Jos. A. Bank sales, this is a false, illusory and sham discount in direct violation of OAC 109:4-3-12.

72. If the true regular or average price of the Jos. A. Bank suit that Mr. Smith purchased is found to be $275, the $895 regular price was a sham. For Smith to have received 70% off of the true regular price of the suit, he should have paid $82.50. Instead, he paid $268.50, or 70% off the grossly inflated $895 sham price. Thus, he received no actual discount of any real value.

73. Smith's damages in such a scenario would be the $268.50 he paid, less the $82.50 he should have paid, or $186. This damage flows directly from Jos. A. Bank's "deceptive and therefore illegal" conduct under OAC 109:4-3-12.

74. Similar examples could be put forth for Bucher and each member of the putative Class by simply substituting the true "regular price" of the suit or sportcoat into each transaction. This assures that each customer ultimately gets what they were promised, whether that is a suit at "x% off" of "regular price" or certain "free items" with purchase of one suit at "regular price."

75. Damages are easily calculated by simply replacing the fake "regular price" with the REAL regular price in the context of each class member's purchase.

76. Each Class member has incurred similar damages caused by Jos. A. Bank deceptively passing the costs of its sales on to the Class members. The damages will vary depending on the items purchased and the particular sale, but are easily ascertainable on a Class-wide basis.

## **CLASS CERTIFICATION IS APPROPRIATE**

77. Consumer cases are ideally suited for class treatment.

78. Section 1345.09(B) of the Revised Code provides:

> Where the violation was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the Revised Code before the consumer transaction on which the action is based, or an act or practice determined by a court of this state to violate section 1345.02, 1345.03, or 1345.031 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code, the consumer may rescind the transaction or recover, but not in a class action, three times the amount of the consumer's actual economic damages or two hundred dollars, whichever is greater, plus an amount not exceeding five thousand dollars in noneconomic damages or recover damages <u>or other appropriate relief in a class action under Civil Rule 23, as amended</u>. (emphasis added.)

79. Thus, the General Assembly has specifically provided for class treatment of cases of this nature.

80. To Plaintiffs' knowledge, no class action of this nature is pending against this Defendant in Ohio.

81. Moreover, there are no parallel pending individual actions.

82. Each Class member has been damaged in a relatively modest amount, making individual actions impracticable.

83. There are thousands of Class members, making joinder impractical.

84. A class action is the superior method of resolving this dispute.

85. Plaintiffs are intelligent, understand the claims and are able to represent the interests of the Class.

86. The interests of Plaintiffs are not antagonistic to the Class.

87. Plaintiffs have chosen attorneys who are experienced in CSPA cases, class action and complex litigation. Counsel and the Class representatives will adequately and diligently pursue the interests of the Class.

88. There are common questions of fact and law that predominate across the Class. For example, whether the Class member purchased a suit within the Class period; whether the suit was purchased during a "free" or "% OFF" sale; whether the cost of the "free" or "% OFF" was actually borne by inflating the regular price of the suit; the actual number of suits and other items sold at the claimed regular price absent a sale, etc.

89. Further, because Jos. A. Bank's advertising and conduct is essentially uniform across its Ohio stores, the legal issues will be common across the Class. The common questions of fact and law will have common answers throughout the Class.

90. The claims are typical across the Class and the defenses will be typical across the Class.

91. As a matter of public policy, this consumer matter should proceed as a consumer class action that will produce several salutary byproducts, including: (1) a therapeutic effect upon those sellers who indulge in deceptive practices; (2) aid to legitimate business enterprises by curtailing illegitimate competition, and (3) avoidance to the judicial process of the burden of multiple litigation involving identical claims.

92. Two classes should be defined as follows:

- **All persons who purchased a suit, dress pants or sportcoats/suit jackets at a Jos. A. Bank retail store in Ohio, within two years of the filing of this Complaint, where the purchase price of the item was for a percentage or discount off an advertised "regular price."**

- **All persons who purchased a suit, dress pants or sportcoats/suit jackets at a Jos. A. Bank retail store in Ohio, within two years of filing of this Complaint, where the purchase was for one item based on a "regular price" in connection with an offer of at least one other "free" item.**

93. The Class should be certified and each Class member should be compensated in a manner that will put the Class member in a position the member would be in had the cost of the sale <u>not</u> been passed on to the Class member and the "regular price" as "retail price" not artificially inflated as discussed in paragraphs 66-75.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the Class demand a jury trial on all claims so triable and judgment as follows:

1. Declaring Jos A. Bank's sales and marketing practices to be wrongful, unfair, unconscionable and in violation of Ohio law;

2. Enjoining Jos. A. Bank from further use of inflated "regular price" descriptions and order compliance with R.C. 1345.02 and the associated Administrative Rules;

3. Compensatory damages in an amount according to proof;

4. Prejudgment interest at the maximum rate permitted by applicable law;

5. Costs and disbursements assessed by Plaintiffs in connection with this action, including reasonable attorneys' fees, pursuant to applicable law; and

6. Such other relief as this Court deems just and proper.

## JURY DEMAND

Now come Plaintiffs, by and through counsel, and hereby requests that the within matter be tried by a jury of the maximum number allowed by law.

May 24, 2013

        s/ Daniel Frech
        STUART E. SCOTT  (0064834)
        DANIEL FRECH  (0082737)
        **SPANGENBERG SHIBLEY & LIBER LLP**
        1001 Lakeside Avenue East, Suite 1700
        Cleveland, OH  44114
        (216) 696-3232
        (216) 696-3924 (FAX)
        *sscott@spanglaw.com*
        *dfrech@spanglaw.com*

        ANDREW R. MAYLE  (0075622)
        JEREMIAH S. RAY  (0074655)
        **MAYLE, RAY & MAYLE**
        210 South Front Street
        Fremont, OH  43420
        (419) 334-8377
        (419) 355-9698 (FAX)
        *amayle@mayleraymayle.com*
        *jray@mayleraymayle.com*

        OF COUNSEL:

        HASSAN A. ZAVAREEI  (D.C. 456161)
        JEFFREY KALIEL  (CA 238293)
        **TYCKO & ZAVAREEI, LLP**
        2000 L Street, NW, Suite 808
        Washington, DC  20036
        (202) 973-0900
        (202) 973-095 (FAX)
        *hzavareei@tzlegal.com*
        *jkaliel@tzlegal.com*

        ***Counsel for Plaintiffs and the Proposed Class***